UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-62068-Civ-JORDAN
MAGISTRATE JUDGE P.A. WHITE

ALEX IVANOVIC,                    :

    Petitioner,               :

v.                                :          REPORT OF
                                             MAGISTRATE JUDGE
WALTER A. McNEIL,                 :

    Respondent.               :
_____

I. <u>Introduction</u>

Alex Ivanovic, a state prisoner confined at South Bay Correctional Facility at South Bay, Florida, has filed this <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking the constitutionality of his convictions and sentences entered in Case Nos. 05-04699, 05-05274 and 05-06759 in the Circuit Court of the Seventeenth Judicial Circuit of Florida at Broward County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition, the Court has the petitioner's response to an order regarding the limitations period, the respondent's response to an order to show cause with multiple exhibits,[1] and the petitioner's reply.

_____

[1]It is noted that the respondent in his Response in Opposition to Petition for Writ of Habeas Corpus (DE# 10) has limited his response to the convictions entered in Broward County Circuit Court Case No. 05-04699. No mention whatever has been made of Ivanovic's other two criminal cases now under attack (i.e.,

## II. <u>Claims</u>

Ivanovic raises the following grounds for relief:

1.   His pleas of no contest were involuntarily entered, because (a) trial counsel failed to request the court to order a psychological evaluation before entry of the pleas and (b) he was taking psychotropic medication at the time he entered the pleas which rendered him mentally unstable.

2.   He received ineffective assistance of trial counsel in connection with the entry of his no contest pleas, because his lawyer failed to have a psychological evaluation and mental competency examination conducted before entry of the pleas.

3.   He received ineffective assistance of trial counsel, because his lawyer failed to investigate and advise him of all possible defenses such as, involuntary intoxication and mental incompetence.

## III. <u>Procedural History</u>

Ivanovic entered into a global negotiated written plea agreement with the state whereby he agreed to enter pleas of no contest to all offenses charged in his then-pending three criminal cases (i.e., strongarm robbery and fleeing or attempting to elude a law enforcement officer charged in Case No. 05-04699; strongarm robbery charged in Case No. 05-05274; and strongarm robbery charged in Case No. 05-06759). <u>See</u> Transcript of change of plea hearing conducted on January 19, 2006. (DE# 11; Ex. E). Pursuant to the negotiated pleas of no contest, Ivanovic was convicted of all crimes charged and he was sentenced pursuant to the negotiated

---

Broward County Circuit Court Case Nos. 05-05274 and 05-06759). <u>Id</u>. The Respondent's supporting Appendix also does not include certain pertinent state court documents filed in the other two criminal cases. (DE# 11). Ivanovic challenges his convictions in all three criminal cases on identical grounds and the respondent has addressed the claims on the merits. Since the record currently before this Court is sufficient to address the claims as to all of Ivanovic's convictions now attacked and to dispose of the petition, in the interest of expediency, the Court will not delay disposition of the case to require the respondent to file a supplemental response and/or to supplement the record.

2

agreement to a total sentence of twenty years' imprisonment as an habitual felony offender with a fifteen-year minimum mandatory term as a prison releasee reoffender. <u>Id</u>. <u>See also</u> Plea of Guilty or No Contest to Criminal Charges in Circuit Court; Judgment; Sentence. (DE# 11; Ex. C, F). Ivanovic did not file a timely notice of appeal from his convictions and sentences. Although he was granted permission to pursue a belated direct appeal by the Florida Fourth District Court of Appeal, Ivanovic subsequently voluntarily dismissed the direct appeal. (DE# 11; Ex. H, I, J, K).

Ivanovic pursued postconviction relief, filing a <u>pro</u> <u>se</u> motion pursuant to <u>Fla.R.Crim.P</u>. 3.850 with supporting exhibits and separate memorandum of law, styled in all three criminal case numbers. (DE# 11; Ex. L, M). Ivanovic challenged his convictions on the identical claims presented in the instant petition and he raised an additional unrelated ground for relief. <u>Id</u>. The state filed a response with supporting exhibits, addressing each claim on the merits and arguing *inter alia* that Ivanovic was not entitled to postconviction relief in that his claims were meritless. (DE# 11; Ex. N). The trial court summarily denied the Rule 3.850 motion for the reasons given in the state's response and the state's response was attached to and incorporated in the order. (DE# 11; Ex. O). Ivanovic's <u>pro</u> <u>se</u> motion for rehearing with supporting exhibits was denied by the trial court. (DE# 11; Ex. P, Q). Ivanovic took an appeal from the trial court's rulings and the Florida Fourth District Court of Appeal affirmed the denial of postconviction relief in a *per curiam* decision without written opinion. (DE# 11; Ex. T). <u>See also</u> <u>Ivanovic v. State</u>, 993 So. 2d 535 (Fla. 4 DCA 2008)(table). Soon after the mandate issued in the appellate court, Ivanovic came to this Court filing the instant federal petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

IV. <u>Threshold Issues - Timeliness, Exhaustion and Procedural Bar</u>

The respondent correctly does not challenge the timeliness of this petition. <u>See</u> 28 U.S.C. §2244(d). Further, the respondent properly concedes that the claims raised in this federal petition have been properly exhausted before the state courts, <u>see</u> 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....").[2]

V. <u>Standard of Review</u>

Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). It is important to recognize just how limited is this Court's review in a habeas proceeding. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

---

[2]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Richardson v. Procunier</u>, 762 F.2d 429, 430 (5 Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427, 443 (5 Cir. 1982), <u>cert. denied</u>, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979).

law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. *See id*. at 409-11. <u>See also</u> <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412, 120 S.Ct. at 1523 (majority opinion by O'Connor, J.).  In adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Parker v.</u>

5

Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11 Cir. 2003).
So long as neither the reasoning nor the result of the state court
decision contradicts Supreme Court decisions, the state court's
decision will not be disturbed.[3] Id. Further, findings of fact by
the state court are presumed correct, and the petitioner bears the
burden of rebutting that presumption of correctness by clear and
convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490
F.3d 840, 844 (11 Cir. 2007), cert. denied, ___ U.S. ___, 128 S.Ct.
2053 (2008).

## VI. Facts

In order to appreciate the claims raised in the instant
proceeding and properly dispose of the claims, an extensive review
of the change of plea and sentencing proceedings pertinent to the
issues before this Court is necessary. The case involves negotiated
pleas of no contest. On the day that trial proceedings were to
commence in Case No. 05-04699, January 19, 2006, Ivanovic executed
a standard written plea form, indicating his desire to enter
negotiated pleas of no contest. See e.g., Plea of Guilty or No
Contest to Criminal Charges in Circuit Court entered in Case No.
05-04699. (DE# 11; Ex. C). See also Transcript of change of plea
proceedings at 2. (DE# 11; Ex. E). By executing the form, Ivanovic
was advised that the maximum sentence which could be imposed in the
cases was thirty years and the minimum sentence was fifteen years
with a sentencing guidelines permitted range of 5.41 years to forty

---

[3]The Eleventh Circuit has continued to stress the importance of the
standard established in Section 2254(d), stating that the AEDPA "places a new
constraint on the power of a federal habeas court to grant a state prisoner's
application for a writ of habeas corpus with respect to claims adjudicated on the
merits in state court." Crawford v. Head, 311 F.3d 1288, 1295 (11 Cir. 2002).
Specifically, the AEDPA "modified a federal habeas court's role in reviewing
state prisoner applications in order to prevent federal 'retrials' and to ensure
that state court convictions are given effect to the extent possible under law."
Crawford, supra at 1295, quoting Bell v. Cone, 535 U.S. 685 (2002). See also
Hawkins v. Alabama, 318 F.3d 1302 (11 Cir. 2003)(discussing AEDPA's limits on
federal court authority).

years as an habitual felony offender. <u>See</u> Plea of Guilty or No Contest to Criminal Charges in Circuit Court entered in Case No. 05-04699 at 1. Ivanovic indicated that he understood the possible penalties. <u>Id</u>. The agreement further provided that in exchange for the pleas of no contest, Ivanovic was to receive a total sentence of twenty years' imprisonment as an habitual felony offender with a fifteen-year mandatory minimum term as a prison releasee reoffender. <u>Id</u>. Ivanovic was advised of all constitutional rights he was waiving by entering the pleas, and he again indicated that he understood. <u>Id</u>. at 1-2. By executing the agreement, Ivanovic also indicated that no one had promised or forced him to enter the pleas of no contest and that he was entering the pleas freely and voluntarily. <u>Id</u>. at 1, 2.

On the same date that he executed the written plea agreement, January 19, 2006, Ivanovic appeared before the trial court for change of plea and sentencing proceedings. Before proceeding with the formal plea colloquy, the trial court asked Ivanovic if he wanted to enter into the negotiated plea agreement with the state in all his then-pending cases and receive the sentence specified in the agreement. <u>See</u> Transcript of change of plea proceeding at 2. Ivanovic responded, "Not really, but yes." <u>Id</u>. Due to Ivanovic's equivocal answer, the court went on to advise Ivanovic that he was not required to accept the state's plea offer and that he could, instead, invoke his constitutional right to trial before a jury which trial was scheduled to commence that same morning. <u>Id</u>. 2-3. When asked if he understood and that the court had no desire to force a plea, Ivanovic stated that it was in fact his desire to proceed with the change of pleas. <u>Id</u>. at 3. Ivanovic was then sworn and the trial court conducted a thorough and meticulous plea colloquy. <u>Id</u>. at 3-37.

At the outset, the trial court advised Ivanovic that if at any time he did not understand the court's questions, he should so inform the court and the court would rephrase the question until such time as he understood what was asked. Id. at 3. Ivanovic responded that he understood. Id. The court further advised Ivanovic that if at any time during the proceeding he needed to stop the proceeding to consult with counsel or otherwise, he would be permitted to do so. Id. at 4. Ivanovic again responded that he understood. Id. To ensure that Ivanovic was mentally competent to enter the no contest pleas, the court asked Ivanovic if he was then under the influence of alcohol or any drugs. Id. Ivanovic responded affirmatively and told the court that he was taking the prescription medications Lithium and Prozac which had been prescribed to him by a doctor at the Broward County Jail to treat his bipolar condition and chemical imbalance. Id. The court asked Ivanovic if he had suffered with the conditions before being incarcerated in the Broward County Jail and whether he had taken similar medications before his incarceration. Id. at 5. Ivanovic answered in the affirmative to both inquires. Id. at 5. When asked how long he had been taking the subject medications, Ivanovic answered that he had been taking the medications for seven months and that he took the medications twice per day (i.e., in the morning and at night). Id. The court went on to ask Ivanovic if he had taken his medications the previous night and that morning, and Ivanovic twice answered, "Yes, ma'am." Id.

The following exchange then took place between the court and Ivanovic:

> THE COURT:     Mr. Ivanovic, this medication that you're
>                taking, does it in any way whatsoever
>                interfere or affect your ability to
>                understand what is happening in your case, to
>                understand what's happening here in the

courtroom?

THE DEFENDANT:   I don't think so.

THE COURT:   Do you see any difference by way of taking this medication from the way that you have been in terms of ability to understand and to function while you are incarcerated?

THE DEFENDANT:   Yes.

THE COURT:   What is that?

THE DEFENDANT:   *I'm more focused.*

THE COURT:   *So the medication helps you?*

THE DEFENDANT:   *Right.*

(emphasis added). Id. at 5-6. To be certain that Ivanovic was mentally capable of proceeding with the change of plea, the trial court questioned trial counsel Lewis about Ivanovic's mental health as follows:

THE COURT:   Mr. Lewis, you have been representing Mr. Ivanovic for a substantial period of time now and have had time to talk to him and have discussions with him about pending charges and the case. Is there any doubt in your mind regarding Mr. Ivanovic's competency to proceed with this plea?

MR. LEWIS:   Judge, when you say no doubt in my mind, I know he suffers from a mental illness. In terms of being lucid and rational this morning, I believe that he is.

THE COURT:   And again, what I'm talking about is competency. Not that he doesn't have a mental illness because there's - - he's taking medication for a reason, but I'm talking about his ability to comprehend and to make an educated decision.

MR. LEWIS:   *I have no reason to doubt his competency, Judge. He's been able to speak with me, I think he understands the plea forms, he understands the maximum sentences that he's facing, he understands that if he doesn't*

9

> *want to accept that plea, he can go to trial today, he understands what the maximum sentences are.*
>
> *He finds himself in a very difficult position, as anyone in this [sic] place does, but I believe he understands and I've explained to him the choices that he has and I think the choice he's making is an intelligent one.*

(emphasis added). <u>Id</u>. at 6-7.

The trial court returned to Ivanovic and asked him if he could read and understand English. <u>Id</u>. at 7. When Ivanovic responded with a "yes," the court asked if he had read the written plea form. <u>Id</u>. Ivanovic indicated that he had and that he had understood all that was contained in the form, both front and back. <u>Id</u>. The court specifically asked if he understood the constitutional rights detailed in the document and understood that he was waiving those rights by entering the pleas of no contest. <u>Id</u>. at 8. Again, Ivanovic indicated that he understood. <u>Id</u>. He was next asked if he had discussed his constitutional rights with counsel, and if those were the same rights included in the plea form. <u>Id</u>. Ivanovic answered affirmatively. <u>Id</u>. When asked if had any questions regarding the plea form and the constitutional rights that he was waiving, Ivanovic answered, "No." <u>Id</u>.

The court asked Ivanovic if he wished to give up the constitutional rights he would otherwise have had if he had proceeded to trial and, instead, dispose of his three cases by way of the negotiated no contest pleas. <u>Id</u>. at 8-9. Ivanovic again responded in the affirmative and stated that he believed that, after considering the totality of the circumstances, entering the no contest pleas was in his best interest. <u>Id</u>. at 8-9. He acknowledged that one of the rights he was waiving was his right to

trial before a judge or jury. Id. at 9. The court also asked Ivanovic: "Do you understand that if there were any motions, any legal matters, any defenses that you had that you wish to present to the Court or you wanted Mr. Lewis to address with the Court, you are forever giving up your right to do that." Id. at 10. Ivanovic responded that he understood. Id. When asked if he was satisfied with the services rendered by counsel, Ivanovic answered in the affirmative. Id. at 8.

After establishing that Ivanovic qualified as an habitual felony offender and prison releasee reoffender pursuant to Florida sentencing laws, the court asked Ivanovic if he understood that he qualified for enhanced sentencing as an habitual felony offender and prison releasee reoffender, and Ivanovic answered that he understood. Id. at 11-21, 23. The trial court informed Ivanovic that he could receive consecutive sentences up to thirty years' imprisonment in each of his three cases as an habitual felony offender with a minimum mandatory of fifteen years as a prison releasee reoffender. Id. 19-20. Ivanovic stated that he understood. Id. at 20-1. The trial court further advised Ivanovic that he qualified as a violent career criminal and, as such, he could receive consecutive sentences of forty years' imprisonment with consecutive thirty-year mandatory minimum terms which would amount to a total possible sentence of 120 years with a 90-year minium mandatory term. Id. at 21-2. Ivanovic told the court that he understood all potential penalties. Id. at 22.

The court went on to explain the ramifications of habitual offender sentencing and how such sentencing would impact gaintime. Id. at 24-5. Ivanovic appeared to have some difficulty understanding the court's comment that as an habitual felony offender he was not guaranteed any gaintime towards his sentence

and any award was within the sole discretion of the Florida Department of Corrections. Id. at 25-6. The trial court then went to great lengths to explain to Ivanovic that it was possible that he would receive no gaintime whatever and be required to serve his entire twenty-year sentence or he could possibly receive gaintime, but only after he had served 85 percent of his sentence Id. at 25-8. The court explained that the award of gaintime was not in any way related to his behavior in prison. Id. at 27-9. After the extensive discussion regarding the gaintime issue, Ivanovic ultimately indicated that he understood that he might be required to serve one-hundred percent of his twenty-year sentence and that he did not need to discuss the matter further with trial counsel. Id. at 29. He also indicated that he understood that the fifteen-year mandatory minimum term was a day-for-day sentence with no possibility whatever for early release. Id. Ivanovic also stated that no one, including his lawyer, had made any promises, representations, or guarantees whatever with regard to the outcome of the cases other than what was discussed at the plea proceeding. Id. at 29.

When the trial court asked Ivanovic whether anyone, including trial counsel, had forced, coerced or unduly influenced him to change his pleas and accept the state's plea offer, Ivanovic answered: "Yes. No." Id. at 29-30. Because Ivanovic's response was far from clear, the trial court rephrased the question and asked Ivanovic whether he was being forced in any way to enter the plea when he instead wanted to proceed to trial. Id. at 30. Ivanovic responded that he was not being forced to change his plea. Id. The court asked Ivanovic if he had any question for the court or if there was any matter that he wanted to bring to the court's attention, and he answered in the negative. Id. The court went on to expressly ask Ivanovic: "And has anyone, including Mr. Lewis,

told you how to answer my questions?" Id. Ivanovic unhesitatingly responded: "No." Id. To determine whether the change of pleas was in fact voluntarily entered, the court asked, "Those are your voluntary answers and your own answers, is that correct?" Id. at 31. Ivanovic stated: "Yes, ma'am." Id. The trial court next asked counsel whether he agreed that the sworn probable cause affidavits filed in each of the three cases established a factual basis for the pleas, and trial counsel stipulated that for purposes of the pleas it did and agreed that the sworn affidavits could be incorporated into the pleas.[4] Id. at 31. The trial court then accepted the change of pleas as knowing and voluntarily made with a sufficient factual basis. Id. at 31-2. The court found that Ivanovic qualified as an habitual felony offender and prison releasee reoffender. Id. at 32-7. After the state agreed to waive the violent career criminal designation in exchange for the no contest pleas, the trial court sentenced Ivanovic pursuant to the negotiated plea agreements. Id. at 34-7.

## VII. Discussion

Although raised as three separate grounds for relief, Ivanovic is essentially claiming that his convictions were obtained by pleas of no contest which were unlawfully induced or not made voluntarily and intelligently, because at the time of the change of plea proceeding he was mentally incompetent and/or under the influence of various potent psychotropic medications that rendered him incompetent to enter the pleas.[5] In a related claim, he alleges

---

[4]See e.g., Probable Cause Affidavit executed on March 17, 2005, by Detective Hierrezuelo filed in Broward County Circuit Court Case No. 05-04699. (DE# 11; Ex. A).

[5]Psychotropic drugs are a large class of drugs which affect mental activity. These drugs are used to treat serious psychotic disorders. They reduce the symptoms of hallucinations, delusions, paranoid ideation, and disturbed mental thought in patients. "The purpose of the drugs is to alter the chemical balance in a patient's brain, leading to changes, intended to be beneficial, in

13

that trial counsel rendered ineffective assistance when counsel failed to have psychological evaluations conducted before the entry of the no contest pleas, which examinations would have revealed his lack of competency, and/or when counsel failed to pursue at trial defenses of involuntary intoxication and mental incompetence. For the reasons set forth below, Ivanovic is not entitled to relief in this habeas corpus proceeding. It is apparent from the extensive review of the record above that Ivanovic's no contest pleas were entered freely, voluntarily and knowingly with the advice received from competent counsel and not involuntarily and/or unknowingly entered, as now claimed. See Boykin v. Alabama, 395 U.S. 238, 243 (1969); Brady v. United States, 397 U.S. 742, 748 (1970).[6] See also Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668 (1984).[7]

---

his or her cognitive processes." Washington v. Harper, 494 U.S. 210, 229 (1990).

[6]It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, including the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Id. See also Brady v. United States, 397 U.S. 742, 748 (1970). A defendant who waives his constitutional rights must do so "competently and intelligently." Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984). The general principles of law with regard to guilty pleas are equally applicable for pleas of nolo contendere. North Carolina v. Alford, 400 U.S. 25, 37 (1970).

[7]The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel. U.S. Const. Amend. VI. In order to prevail in this habeas corpus proceeding on his claim of ineffective assistance of counsel, the petitioner must make a particularized showing of an identifiable lapse in counsel's performance which falls below constitutional standards, and the petitioner must establish that the error was prejudicial, that is, but for counsel's error, there is a reasonable probability that the ultimate result would have been different. Strickland v. Washington, 466 U.S. 668 (1984). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Id. In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

The test of competency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 788 (1960)(citation omitted); Bouchillon v. Collins, 907 F.2d 589, 592 (5 Cir. 1990). The mere presence of mental illness or other mental disability at the time of trial does not necessarily mean that a defendant is incompetent under the *Dusky* test. The mental illness or disability must have been so debilitating that the defendant  was unable to consult with his lawyer and did not have a rational and factual understanding of the proceedings. See generally Bolius v. Wainwright, 597 F.2d 986, 990 (5 Cir. 1979). The competency standard in a case where the defendant enters a guilty plea or, in this case, no contest pleas, is identical to the standard for competency to stand trial. Godinez v. Moran, 509 U.S. 389 (1993)(holding that a plea is competently made if the defendant "has the capacity to understand the proceedings and to assist counsel"); DeVille v. Whitley, 21 F.3d 654 (5 Cir.), cert. denied, 513 U.S. 968 (1994).

In a federal habeas proceeding stemming from a state court conviction, the burden is on the petitioner to prove, by a preponderance of the evidence that he was incompetent in fact at the time of the plea. Bouchillon, 907 F.2d at 592. "The presence of

---

assistance. Id. at 689. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. In the context of a case in which guilty pleas are entered, application of the second prong of the two-pronged standard of *Strickland* requires a showing that there is a reasonable probability that but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). A claim of ineffective assistance is a mixed question of law and fact. Strickland, 466 U.S. at 698.

some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to knowingly and voluntarily enter a plea as well as aid and assist in his own defense." Wolf v. United States, 430 F.2d 443, 445 (10 Cir. 1970). The courts have recognized that "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense." Medina v. California, 505 U.S. 437, 450 (1992). Further, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); Kelley v. Alabama, 636 F.2d 1082, 1084 (5 Cir. Unit B. 1981).

From full review of the record, which includes various documents submitted by Ivanovic during the state postconviction proceeding, it is apparent that Ivanovic did suffer and, most probably, continues to suffer, from various mental health illnesses. See Psychological Evaluation conducted by Janice Wilmoth, Ph.D., Psy.D. on May 21, 2003; Letter from Thomas G. Beley, Ph.D., LCSW dated August 15, 2005; Letter from Ronald Kurlander, M.D., P.A. dated August 2, 2005; Medication Administration Record for periods of 2005 and 2006; excerpts of past presentence investigation reports; University Hospital Mental Health Assessment Report prepared by Vladimir Havryliuk, M.D. on May 23, 2005. (Exhibits attached to Rule 3.850 motion and motion for rehearing)(DE# 11; Ex. L, P). Specifically, Ivanovic has been diagnosed with a depressive disorder, unspecified mood disorder, personality disorder with schizoid and antisocial traits, bipolar disorder, sociopathic personality disorder, and addictive personality disorder. Id. He also has a history of substance abuse and chemical dependency, for which he sought treatment in March 2005, and a past severe head injury. Id. The various medical experts indicated in their reports, however, that Ivanovic could

successfully be treated for his mental health illness(es) with psychotropic medications, see e.g., Psychological Evaluation conducted by Dr. Janice Wilmoth on May 21, 2003, at 16, and he has been so treated with such medications before and during the time of the subject plea proceeding. See Medication Administration Record; LabCorp report dated January 6, 2006; University Hospital Mental Health Assessment Report prepared by Dr. Havryliuk, M.D. on May 23, 2005.

While Ivanovic has provided documentation of his history of mental health disorders and substance abuse, he has nonetheless not demonstrated that psychological factors or a history of substance abuse impaired his ability to enter a knowing and intelligent plea in the subject criminal cases. Although he apparently was taking prescribed psychotropic medications at the time of the change of plea proceeding, the transcript of the plea does not indicate that Ivanovic was incompetent to enter a plea or that his plea was involuntarily and unknowingly made and, in fact, indicates otherwise. The transcript shows that Ivanovic quickly and appropriately answered the trial court's questions during the extensive plea colloquy. Ivanovic was always coherent and showed no signs of not understanding what was transpiring at the change of plea proceeding. The only confusion exhibited at all by Ivanovic involved the amount of gain time he could expect to receive as a result of the habitual offender sentencing. Ivanovic and the court engaged in a extended and pertinent dialogue regarding the ramifications of habitual offender sentencing and how such sentencing impacted the length of time Ivanovic would be confined pursuant to the sentences to be imposed. Ivanovic claimed to understand the plea agreement and the rights that he was waiving. He also assured the trial court that he was not promised anything or coerced into pleading no contest, and he stated that his plea

was freely, voluntarily, knowingly, and intelligently made. He indicated that it was his choice to enter a plea and that he understood the consequences of his plea. He additionally stated that he had reviewed the plea form with his attorney and had no questions about the form. Ivanovic also expressed satisfaction with his attorney. As noted, these sworn responses carry a strong presumption of truthfulness and pose a formidable barrier in subsequent collateral proceedings. See <u>Blackledge v. Allison</u>, 431 U.S. at 74; <u>Kelley v. Alabama</u>, 636 F.2d at 1084.

It cannot be overlooked that at the start of the plea proceeding, the trial court asked Ivanovic whether he was then taking any prescription medication. As indicated above, Ivanovic answered affirmatively and provided the court with the names of the medications he had been receiving twice daily at the Broward County Jail for a seven-month period, and advised the court that he had taken the medications the evening before and the morning of the plea proceeding. During that particular portion of the colloquy, Ivanovic unequivocally advised the court that the medications he was then receiving were beneficial to him in that they allowed him to be more "focused." The court then immediately addressed trial counsel, who had been representing Ivanovic for a substantial period of time at the time of the plea proceeding,[8] and questioned counsel about Ivanovic's mental competence to proceed with the proceedings. Counsel was aware of Ivanovic's mental health history and acknowledged that Ivanovic did indeed suffer from a mental illness, however, he further stated that Ivanovic was lucid and rational that morning. Counsel went on to advise the court that he did not doubt Ivanovic's competency in that Ivanovic was able to

---

[8]Ivanovic was arrested on or about March 17, 2005, and the Information was filed on or about April 13, 2005. (DE# 11; Ex. A and B). The change of plea proceeding was conducted on January 19, 2006. (DE# 11; Ex. E).

speak with counsel, he understood the plea forms, he understood the maximum sentences that he was facing, and he understood that he was not required to accept that plea and he could proceed to trial that same day. As indicated, while the opinion of Ivanovic's counsel certainly is not determinative, a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings. See United States v. Clark, 617 F.2d 180, 186 (9 Cir. 1980)(stating that fact that defendant's attorney considered defendant competent to stand trial was significant evidence that defendant was competent).

The evidence presented by Ivanovic to support his claim of mental incompetency merely indicate that Ivanovic is of below-normal intelligence and that he suffered from various mental health illnesses and past substance abuse. These reports alone do not show by a preponderance of the evidence that Ivanovic was incompetent in fact at the time of the change of plea proceeding. Further, the record before this Court does not indicate that Ivanovic was unable to consult with his counsel or understand the proceedings. Rather, Ivanovic and counsel indicated that Ivanovic was able to consult with counsel and that Ivanovic had understood the matters presented to him.

The fact that Ivanovic was taking psychotropic medications on a regular basis, rather than evidence of incompetency, is evidence of competency. In other words, petitioner's mental condition, which apparently requires treatment with medications, such as Lithium and Prozac, does not establish that he was mentally incapacitated during the plea proceeding. The fact that petitioner received psychotropic medications before and during the plea proceedings to treat his mental health issues weighs in favor of his being able to function than not. Many medical authorities consider psychotropic

19

drugs to be the primary treatment for acute and chronic mental disorders. See Mills v. Rogers, 457 U.S. 291, 293 n. 1 (1982). See Brown v. McKee, 232 F.Supp.2d 761, 768 (E.D.Mich. 2002). While there are potential side-effects associated with the taking of anti-psychotic medications, as is the case with any type of medication, review of the record as a whole appears to indicate that any possible side effects suffered by Ivanovic did not impair his ability to proceed with the no contest pleas.

Based upon Ivanovic's responses at the plea proceeding, as well as his demeanor at the proceeding, the trial court implicitly found by accepting Ivanovic's change of plea as knowingly and voluntarily made that Ivanovic was mentally competent to enter the no contest pleas. Again, during the postconviction proceeding, where the identical issue was raised and where Ivanovic supplied the court with the above-mentioned medical health records and reports, the state court implicitly found Ivanovic competent at the time of the entry of the plea by denying him postconviction relief. Review of the record yields no suggestion that the trial court's findings of fact made during the state postconviction proceeding where the identical issues were raised, which findings were approved by the state appellate court, were not supported by the record or were otherwise deficient. The findings therefore must be presumed correct because Petitioner has not rebutted the presumption with clear and convincing evidence.[9]   28 U.S.C.

---

[9]It should be noted that the trial court judge presiding over the change of plea and sentence proceedings was the same judge who presided over the subject state postconviction proceedings. Where the judge presiding over the trial proceedings or, in this case plea proceedings, is the same judge presiding over the post conviction proceedings, the presumption of correctness afforded the findings of fact of the state court is particularly strong. See May v. Collins, 955 F.2d 299, 314 (5 Cir.), cert. denied, 504 U.S. 901 (1992).

§2254(e).[10]  See Hernandez v. Ylst, 930 F.2d 714, 718 (9 Cir. 1991)(stating in §2254 proceeding: "We deem significant the fact that the trial judge, government counsel, and Hernandez's own attorney did not perceive a reasonable cause to believe Hernandez was incompetent.")(citation omitted).

Ivanovic also apparently raises the related claim that the trial court violated his due process rights by failing to *sua sponte* order psychiatric evaluations be conducted of him before proceeding with a change of plea proceeding. To the extent that Ivanovic is arguing that his procedural due process rights were violated under Pate v. Robinson, 383 U.S. 375 (1966),[11] this argument is also meritless. The court had no *sua sponte* duty to order psychological evaluations and/or hold a pre-plea competency hearing under *Pate* in that for the identical reasons stated immediately above with regard to the ineffective assistance of trial counsel claim, the record does not support the need for

_____

[10]Federal courts in habeas corpus proceedings are required to grant a presumption of correctness to state court's explicit and implicit findings of fact, if supported by the record. Green v. Johnson, 160 F.3d 1029, 1045 (5 Cir. 1998), cert. denied, 525 U.S. 1174 (1999). Thus, even where the state courts make no express findings, federal courts reviewing petitions for habeas corpus are entitled to "reconstruct the findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia." Fike v. James, 833 F.2d 1503, 1505-06 (11 Cir. 1987), quoting, Townsend v. Sain, 372 U.S. 293, 314 (1963), overruled in part on other grounds, Kenney v. Tamayo-Reyes, 504 U.S. 1 (1992). Accordingly, if it is clear that the trial court would have granted the relief sought by the petitioner had it believed the testimony of certain witnesses, "its failure to grant relief was tantamount to an express finding against the credibility of [those witnesses]." Marshall v. Lonberger, 459 U.S. 422, 433 (1983), citing, LaVallee v. Delle Rose, 410 U.S. 690 (1973).

[11]A court is required sua sponte to hold a competency hearing whenever there is substantial doubt concerning the defendant's competence. Pate v. Robinson, 383 U.S. 375 (1966)(holding that due process requires evidentiary hearing whenever there is substantial evidence that defendant may be mentally incompetent). When a judge has knowledge of prior evidence of unusual behavior which is in evidence at trial or the subject of prior medical opinion, he or she is constitutionally obligated to order a competency evaluation. Drops v. Missouri, 420 U.S. 162, 179 (1975).

additional competency proceedings.

Thus, Ivanovic has not demonstrated that his convictions were the product of unlawfully entered no contest pleas. See Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. at 238 (1969). Further, counsel's performance was not constitutionally ineffective with regard to the issue of mental competency. See Knowles v. Mirzayance, 129 S.Ct. at 1421-22 (holding that counsel cannot be constitutionally ineffective in failing to pursue a defense that had almost no chance of success).

With regard to the issue of counsel's failure to pursue the alleged defenses of insanity and involuntary intoxication, Ivanovic accepted a plea in the subject case, chose to forego his right to go to trial and waived any and all rights he may have had to challenge his convictions and sentences. The traditional rule is that a defendant's plea of guilty made knowingly, voluntarily, and with the benefit of competent counsel, waives all nonjurisdictional defects in the proceedings. Tollett v. Henderson, 411 U.S. 258, 267 (1973)(noting that a guilty plea represents a break in the chain of events which had preceded it in the criminal process); United States v. Broce, 488 U.S. 563 (1989). See also Barrientos v. United States, 668 F.2d 838, 842 (5 Cir. 1982). The waiver also extends to claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. See Bradbury v. Wainwright, 658 F.2d 1083, 1087 (5 Cir. 1981), cert. denied, 456 U.S. 992 (1982). See also United States v. Bohn, 956 F.2d 208, 209 (9 Cir. 1992)(per curiam)(holding that pre-plea ineffective assistance of counsel claims are also waived by guilty plea). Exceptions to the general rule are those cases which are constitutionally infirm because the government has no power to prosecute them at all, which is not applicable to this case. See Broce, 488 U.S. at 574-575. Thus, a

voluntary guilty or no contest plea constitutes a waiver of all non-jurisdictional defects in the proceeding up to that point. Ivanovic's claims challenging the representation of counsel with regard to the investigation and pursuit of possible defenses to the crimes committed do not relate to the voluntariness of the plea. They are therefore waived by the entry of the guilty pleas.

Even if not waived by the entry of the pleas, Ivanovic would not be entitled to habeas corpus relief on his claim that counsel's performance was constitutionally ineffective when he failed to pursue such defenses as insanity and/or involuntary intoxication. It is true that insanity was an available defense to the crime of armed robbery. See generally Wright v. State, 994 So.2d 447 (Fla. 3 DCA 2008). Childers v. State, 782 So.2d 513, 517 (Fla. 1 DCA 2001), quoting, 15 Fla.Jur.2d, Criminal Law §3059 at 575 (1993)("A person who is insane is incapable of forming the intent necessary to commit a crime, and such an individual cannot be legally punished for acts which would be criminal if he were not insane"). However, based upon the record before this Court, Ivanovic did not qualify as legally insane pursuant to the applicable standard, which in Florida is the McNaughton Rule.[12] First, it is noted that Ivanovic has provided no records whatever to this Court or the state courts that he was legally insane at the time of the commission of the subject offenses in March 2005. The records he has submitted also do not support any such defense. For example, after conducting a psychological evaluation of Ivanovic on May 21,

---

[12]The McNaughton Rule considers 1) the individual's ability at the time of the incident to distinguish right from wrong, and 2) his ability to understand the wrongness of the act committed. See Gurganus v. State, 451 So.2d 817, 820 (Fla. 1984). See also Reynolds v. State, 837 So.2d 1044, 1048(Fla. 4 DCA 2002). Thus, under McNaughton, if a defendant suffers from some mental infirmity, defect, or disease, but nevertheless understands the nature and consequences of his actions and that his actions are against the law, his actions are punishable. Wallace v. State, 766 So.2d 364, 368 (Fla. 3 DCA 2000).

2003, Dr. Wilmoth reported that while Ivanovic was cognitively immature, which could lead to faulty conclusions and can limit coping and adjustment, she found that "[Ivanovic's] thinking [was] usually appropriate for the situation, providing an essential ingredient for accurate reality testing. He show[ed] no significant problems with distortion of reality, perceiving the environment as accurately as do most people." See Report of Psychological Evaluation prepared by Dr. Wilmoth dated May 21, 2003, at 4-5. (Exhibit attached to Rule 3.850 motion)(DE# 11; Ex. L). Dr. Wilmoth concluded in part that Ivanovic could be successfully treated for his mental illness with daily medication and that he indicated that he was amenable to treatment. Id. at 16. The records submitted by Ivanovic show that in May 2005, shortly after the instant criminal incidents while Ivanovic was subject to house arrest, his mental health disorder was being treated with the antipsychotic medications of Geodon and Zoloft. See University Hospital and Medical Center medical records. (Exhibits attached to motion for rehearing in Rule 3.850 proceedings)(DE# 11; Ex. P).

As to an involuntary intoxication defense based upon the use of prescription medication, in Florida where the intoxication is involuntary, it typically has been raised in an attempt to prove an insanity defense rather than an intoxication defense. See Sluyter v. State, 941 So.2d 1178, 1180-81 (Fla. 2 DCA 2006). The definition of insanity has been expanded to include those situations in which a person could not distinguish right from wrong as the result of an involuntarily-induced intoxicated state. Id. Where the intoxicating dose of medication has been prescribed or administered by a physician, any resulting intoxication is considered to be involuntary. Id. Here, even if this Court assumes that Ivanovic was prescribed psychotropic medications and he was taking those medications as prescribed, there is no indication in the record

that he took the wrong dose or that he took the drug improperly and that he was incapable of distinguishing right from wrong at the time of the commission of the subject offenses.

As to his history of chemical substance abuse, in Florida, "the law recognizes insanity super-induced by the long and continued use of intoxicants so as to produce 'a fixed and settled frenzy or insanity either permanent or intermittent.'" Cirack v. State, 201 So.2d 706, 709 (Fla. 1967) and cases cited therein. As interpreted by the Florida courts, the *Cirack* test contemplates a mental disease or disorder which manifests itself intermittently or permanently irrespective of consumption of alcohol. State By and Through Office of State Attorney for Twentieth Judicial Circuit v. McNally, 336 So.2d 713, 715 (Fla. 2 DCA 1976). The court noted in *McNally* that evidence of long-term substance abuse alone does not prove insanity, and that otherwise any individual diagnosed as an alcoholic would be able to assert the defense of insanity on that basis alone. Id. Thus, in this case, voluntary intoxication alone could not be the basis for an insanity defense. See Cirack v. State, supra. If Ivanovic is contending that the substance abuse and/or past head injury demonstrated his "diminished capacity," he is not entitled to relief in that Florida has rejected a diminished capacity defense. See Chestnut v. State, 538 So.2d 820 (Fla. 1989)(holding that evidence of abnormal mental condition not constituting legal insanity is inadmissible for purposes of proving either that accused could not or did not entertain the specific intent or state or mind essential to proof of the offense, in order to determine whether crime charged, or lesser degree thereof, was in fact committed). Finally, there is absolutely no record support for an voluntary intoxication defense in that there is no evidence whatever that Ivanovic was intoxicated at the time of the commission of the subject offenses and/or that he advised defense

25

counsel that he was so intoxicated.[13] More important, any allegation of voluntary, as opposed to involuntary, intoxication would not be a defense to the crimes charged. See Fla.Stat. §775.051.[14]

Accordingly, trial counsel did not render constitutionally ineffective assistance when he failed to pursue the above-discussed defenses. Counsel has no duty to raise defenses which have little or no chance of success. See Knowles v. Mirzayance, ___ U.S. ___, ___, 129 S.Ct. 1411, 1422, 173 L.Ed.2d 251 (2009)(the law does not require counsel to raise every available non-frivolous defense). See generally, Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues).

Finally, Ivanovic's assertion here that he would not have entered the no contest pleas but would have instead gone to trial

---

[13]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'")(citation omitted)); Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983). See also, e.g., Panuccio v. Kelly, 927 F.2d 106, 109 (2 Cir. 1991)(a defendant's testimony after the fact suffers from obvious credibility problems). Moreover, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979); King v. United States, 565 F.2d 356 (5 Cir. 1978); Clayton v. Estelle, 541 F.2d 486 (5 Cir. 1976).

[14]Ivanovic committed the subject offenses in March 2005. At that time voluntary intoxication was not a defense to specific intent crimes. Gardner v. State, 480 So.2d 91, 92 (Fla. 1985). Section 775.051, Florida Statutes (1999), precludes the defense of voluntary intoxication for crimes committed after its effective date of October 1, 1999. Ch. 99-174, §1, at 968, Laws of Fla. See §775.051, Fla.Stat. (West 1999).

on all crimes charged is clearly not credible. The record in this case indicates that there was a factual basis for the pleas, as found by the trial court during the plea proceeding. Moreover, the change of plea proceeding took place on the day that trial proceedings had been scheduled and the trial court clearly and unequivocally advised Ivanovic that he had the right to proceed to trial and did not have to accept the state's plea offer.

Further, it is highly unlikely that the trial court would have imposed a lesser sentence without the pleas of no contest after a trial proceeding where he was found guilty of the subject offenses. Under the circumstances of this case, where Ivanovic had an extensive criminal history and where he clearly qualified as an habitual felony offender,[15] the lengthy sentence was appropriate in this case. While it is apparent that he does not now believe so, Ivanovic received a benefit from entering into the open pleas to the court in that an even harsher outcome was likely if he proceeded to trial (i.e., an effective life sentence and designation as a violent career criminal). By entering the pleas, Ivanovic received a sentence lower than what he could have received if he had proceeded to trial and been found guilty of all subject charges (i.e., consecutive sentences, totaling 120 years with a 90-year minium mandatory term). In other words, even if counsel's performance can be viewed as deficient for any or all of the reasons alleged, based upon the above-reviewed record, Ivanovic has not demonstrated that his sentence was increased by the deficient

---

[15]As indicated by the records maintained by the Florida Department of Corrections, before the instant offenses, Ivanovic had been convicted of at least fourteen various offenses spanning from 1989, until 2002. See http://www.dc.state.fl.us. See also Transcript of plea proceeding conducted on January 19, 2005, at 10-23. He further has a long history of arrests and convictions and unsuccessful terms of probation in the State of Ohio. See Excerpts of presentence investigation reports. (Exhibit G to Rule 3.850 motion)(DE# 11; Ex. L). (Exhibit G to Petitioner's Appendix)(DE# 4).

performance of his attorney or, in the converse, that his sentence would have been less harsh. See Glover v. United States, 531 U.S. 198, 121 (2001)(holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established Strickland prejudice"); Spriggs v. Collins, 993 F.2d 85, 88 (5 Cir. 1993)(cited in Glover ). The entry of the pleas was clearly in the best interest of the petitioner, and counsel's performance was not constitutionally ineffective with regard to the no contest pleas and/or sentencing. See Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668 (1984).

Thus, the trial court's determination that Ivanovic was not entitled to postconviction relief on his claims of involuntary no contest pleas and ineffective assistance of trial counsel with regard to the entry of the pleas, which decision was affirmed on appeal, see Ivanovic v. State, 993 So. 2d 535 (Fla. 4 DCA 2008), was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000). See also Knowles v. Mirzayance, ___ U.S. ____, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009), citing, Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam).[16]

---

[16]A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009), *citing*, Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." Id. (citations omitted). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

VIII.  <u>Evidentiary Hearing</u>

Petitioner's request for an evidentiary hearing on his claims should be denied. <u>See</u> Section 28 U.S.C. §2254(e)(2). To be entitled to an evidentiary hearing on habeas claims, the petitioner must allege facts that, if proved at the hearing, would entitle him to relief.  <u>See</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474-75, 127 S.Ct. 1933, 1940 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). For reasons discussed herein, an evidentiary hearing is not required for the disposition of this case. <u>Id</u>. <u>See also</u> <u>Atwater v. Crosby</u>, 451 F.3d 799, 812 (11 Cir. 2006)(addressing petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim."). Ivanovic has failed to demonstrate the existence of any factual dispute that warrants a federal evidentiary hearing as to any of his claims.

IX.  <u>Conclusion</u>

Based upon the foregoing, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 8th day of January, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Alex Ivanovic, <u>Pro</u> <u>Se</u>
     DC# 661424
     South Bay Correctional Facility
     600 U.S. Highway 27 South
     South Bay, FL 33493

     Heidi L. Bettendorf, AAG
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428